J. C. CRAWFORD, Appellant, v. CHICAGO GREAT WESTERN RAILWAY COMPANY.

**Crossing Accident:** PRESUMPTION OF CARE ON PART OF PERSON IN-JURED: *Is rebuttable.* The presumption that one who lost his life in driving over a railroad crossing in front of an approaching train exercised due care is not conclusive.

CONTRIBUTORY NEGLIGENCE OF PLAINTIFF'S SERVANT. In an action against a railroad company for the loss of plaintiff's horses, wagon and harness by a collision in which plaintiff's servant was killed at a crossing by a train, the burden is on plaintiff to show, not only negligence on the part of defendant, but freedom from contributory negligence on the part of his servant.

EVIDENCE OF. Plaintiff's servant drove over a railroad crossing, and was killed by a train which was approaching the crossing at a high rate of speed and without the ringing of bell or giving of other signal but which he could have discovered, if he had looked and listened any time after he was within 125 to 50 feet of the track, in time to have avoided the accident. He knew the crossing, and his eyesight and hearing were good. *Held,* that his negligence was clearly apparent.

*Appeal from Tama District Court.*—HON. OBED CASWELL, Judge.

FRIDAY, OCTOBER 20, 1899.

ACTION at law to recover for injuries to personal property alleged to have been caused by negligence on the part of the defendant. A verdict for the defendant was returned by direction of the court, judgment for costs was rendered thereon, and the plaintiff appeals.—*Affirmed.*

*Struble & Stiger* for appellant.

*Cummins, Hewitt & Wright* for appellee.

ROBINSON, C. J.—The evidence submitted on the part of the plaintiff tended to show the following facts: A rail-

way of the defendant extends through Melbourne, in Marshall county, southward. At a point about two miles south of the town it is crossed at right angles by a wagon road, extending from east to west. About 40 rods east of the crossing is a school house. The surface of the ground over which the road runs descends gradually from a point three hundred feet west of the school house to a point from one hundred and fifty to one hundred and twenty-five feet east of the railway track, where there is a strip of level ground about twenty-five feet in width, called by some witnesses a "swale." From a point one hundred and twenty-five feet east of the track the surface of the ground inclines upward to the track. At a point three hundred feet north of the crossing is the south end of a railway cut, and the ridge through which it passes extends eastward. A person going from the school house westward can see a railroad train approaching from the north at all times until within one hundred and fifty feet of the track, and from that point to the crossing can see a train approaching from the north a distance of five hundred or six hundred feet. The plaintiff resides one-half mile west of the crossing. In November, 1897, an employe of the plaintiff named Claflin, with a team and a wagon of the plaintiff, hauled a load of grain to Melbourne, and while returning was struck at the crossing by a train of the defendant running southward, and killed, the two horses were killed, and the wagon and harness were destroyed. The plaintiff seeks to recover the value of the property destroyed.

At the time of the accident the train was running at a speed of from forty to fifty miles an hour, and approached the crossing without the ringing of a bell or the blowing of a whistle. As Claflin drove towards the crossing, he was standing in the wagon facing westward, and the team was trotting slowly. When he reached the swale the team was checked, if not stopped, for a moment, but it is not shown whether he looked for a train, or, if he did, which

way he looked. He drove westward from the swale, and the accident occurred as stated. It is clear that, had he looked for the train at any time after he was within from one hundred and twenty-five to fifty feet of the track, he would have discovered his danger, and avoided the accident. The plaintiff contends that, as it was the duty of the defendant to give signals of its approach to the crossing, Claflin had a right to rely upon its doing so, and was not required to stop his team, and look and listen, if he could, without so doing, have heard the signals, had they been given. The plaintiff also contends that, as Claflin lost his life in the collision, the presumption that he exercised due care must prevail. That such a presumption is proper, and must be given weight, may be conceded, but it cannot prevail agaist evidence which shows that he could not have exercised due care. That the defendant was negligent appears to have been fully established. See Code, section 2072. The burden was on the plaintiff, however, to show, not only negligence on the part of defendant, but also that his employe was not guilty of contributory negligence. *Baker v. Railway Co.,* 95 Iowa, 163. Before there can be a recovery on account of the negligence of a railway company in failing to give the statutory signals, or for running at an excessively high rate of speed, it must be shown that the person suffering injury from the negligence did not contribute to the injury by negligence on his part, and he cannot, in all cases, rely upon the railway company to give the signals required by statute. A person possessing the ordinary powers of seeing and hearing cannot, without negligence on his part, knowingly approach a railway crossing, and fail to discover an approching train, which he can readily see or hear a sufficient length of time to enable him, with reasonable effort, to avoid danger. *Sala v. Railway Co.,* 85 Iowa, 678; *Banning v. Railway Co.,* 89 Iowa, 74; *Moore v. Railway Co.,* 89 Iowa, 223. So far as the record shows, Claflin's eyesight and hearing were

good, and he knew the crossing. That his negligence contributed to the accident and the destruction of the property in question is clearly shown, and the district court properly directed a verdict for the defendant. Its judgment is therefore AFFIRMED.