MIKE ADAMI, Appellee, v. FOWLER & WILSON COAL COMPANY, Appellant.

**MASTER AND SERVANT:** Workmen's Compensation Act—Cross-Examination. The fact that the Workmen's Compensation Act casts upon a rejecting master the presumption of negligence, furnishes no reason why the master should not, in the cross-examination of the employee, be confined to the points brought out on direct examination.

**TRIAL:** Refusal to Order Interpreter. Refusal to order an examination of a witness through an interpreter will not be disturbed, in the absence of a showing of abuse of discretion.

**MINES AND MINERALS:** Miner's Working Place—Instructions. Instructions reviewed, relative to the reciprocal duties of operator and miner as regards the miner's working place, and held unobjectionable.

**TRIAL:** Misconduct of Counsel. Explicit direction by the court to the jury to disregard misconduct on the part of counsel has large curative qualities.

*Appeal from Appanoose District Court.*—C. W. VERMILION, Judge.

OCTOBER 19, 1920.

ACTION for damages. Verdict and judgment for plaintiff. Defendant appeals.—*Affirmed.*

*Howell, Elgin & Howell,* for appellant.

*Porter & Greenleaf* and *H. E. Valentine,* for appellee.

STEVENS, J.—I. On the afternoon of March 2, 1916, while employed as a miner by defendant in its mine near Rathbun, plaintiff was severely injured, by the fall of a large amount of slate and coal. He had been working in the room in which the accident occurred, which was known as a deficiency room, but a day or two. By a deficiency room is meant one in which the slate and draw slate fall from the roof with the coal, and additional compensation is allowed per ton to the miner for the slate, the excess of which has to be removed therefrom. The evidence is in dispute as to what plaintiff was doing at the time the injuries were received. When several miners who were working in near-by rooms arrived, in response to plaintiff's outcry, they found him lying with his back against the gob, and about five feet from the face of the coal, with a large amount of slate and coal piled upon his leg, which was fractured. He was alone at the time the accident occurred.

It is claimed by defendant that plaintiff neglected and refused to obey the directions and orders of the mine boss to appropriately prop and sprag the coal, and that his injuries, which occurred in his working place, were due wholly and solely to his own negligence. On the other hand, plaintiff claims that, on the morning preceding the occurrence, he requested the mine boss to permit him to build a crib, to support a block of slate which plaintiff claims extended about 15 inches over the coal, and that he was refused permission to do so. He testified that it was this piece of slate that fell upon him. The mine boss denied that anything was said to him about a crib, but said that the conversation related to the extra compensation plaintiff would receive on account of the slate, and that he then

cautioned him of the danger of mining without sufficient sprags, and directed him to sprag the coal. Numerous witnesses who were employed by defendant as miners testified that a crib was unnecessary; while others admitted that cribs had previously been set up near where plaintiff was working. It appears without practical dispute in the evidence that the room in which plaintiff was working was one in which all of the slate and draw slate fell with the coal, leaving a smooth rock roof. The coal was mined by digging under, or undermining, the face, which caused the coal, by its own weight and the weight of the slate about it, to fall upon the floor of the mine. If the weight was not sufficient to cause the coal to fall, a wedge was driven in between the coal and the slate, thereby forcing it down. This is referred to by the witnesses as "sledging down the coal." To prevent the coal from falling upon the miner, sprags are securely set against the coal, causing it to settle down, intsead of falling half over toward the miner, as it might otherwise do. Plaintiff denied that it was necessary, in the room in which he was working, to sledge the coal; denied that he was doing so; and claimed that he had at least three sprags in place. Several of the witnesses testified that they heard him sledging, immediately before they heard his outcry; but plaintiff testified that, instead, he was shoveling dirt when the coal gave way and fell upon him.

The errors relied upon for reversal include rulings upon objections to testimony, and to numerous paragraphs of the court's instructions, together with the refusal of the court to give certain requested instructions on behalf of defendant, and misconduct of plaintiff's attorney, during the trial and during his argument to the jury. On the whole, the case in favor of plaintiff is not a very strong one. Called as a witness in his own behalf, the plaintiff testified in chief that he was working for the defendant, and that, on March 2, 1916, about 2:30 P. M., he was severely injured by some slate and coal which fell upon his leg; and described in

detail his injuries, sufferings, and the treatment accorded his leg.

Counsel for appellant sought, on cross-examination, to show by plaintiff that the accident was due wholly to his negligence; that he was, at the time, engaged in sledging down his coal, without proper spragging; that he had not set sufficient props; and that he was warned by the mine boss not to mine any more coal until he had put up sprags, to keep the coal from falling upon him. Objections were sustained to all questions propounded to the witness, relative to matters not covered by the examination in chief. Appellant takes the position that counsel was entitled to cross-examine plaintiff as to all matters bearing upon the situation and the cause of the accident, whether covered by the examination in chief or not. The court, however, confined the cross-examination to the matters gone over in chief. We see no reason why the scope of the cross-examination of this witness should not be limited, the same as that of any other witness. The presumptions created by Sec. 2477-m, Paragraph d, Code Supplement, 1913, do not change the rule in this respect. It is possible that counsel for appellant was held a trifle closely to the matters gone over in chief, but plaintiff subsequently testified in detail concerning the accident, thereby opening up the field for full cross-examination. Not only, therefore, was the ruling of the court proper, but no prejudice could have resulted to defendant, if it were conceded to have been erroneous.

1. MASTER AND SERVANT: Workmen's Compensation Act: cross-examination.

II. Many of the alleged errors in the court's ruling upon the admission of evidence are wholly without merit, and frequently the matters sought to be elicited were subsequently received. It would not have been error for the court to have permitted the witness to answer a few of the questions to which objection was sustained, and perhaps not thereafter covered by the answers of the witnesses; but the exclusion of the testimony sought, could not have re-

2. TRIAL: refusal to order interpreter.

sulted in prejudice to defendant.  One of the witnesses claimed he did not sufficiently understand or speak the English language to enable him to intelligently give his testimony, whereupon, counsel for appellant requested that his testimony be given by an interpreter.  This request was refused, the court stating that there was no apparent necessity therefor.  There is nothing in the record to indicate that the witness was unable to give his testimony in English, and the court did not abuse its discretion in refusing to permit an interpreter to be sworn.

The remaining rulings complained of are not of sufficient merit to justify separate discussion thereof.  We have, however, examined the record with reference thereto with special care, and find no reversible error at this point.

III.  The court, in the twelfth paragraph of its charge, instructed the jury that, if it found by the greater weight or preponderance of the evidence that, at the time the injuries complained of were received, plaintiff was sledging down coal, and that he was injured by the coal which fell upon him, then defendant was not guilty of negligence that was the proximate cause thereof, and plaintiff could not recover.  The court, however, as a part of said paragraph of its charge, further instructed the jury that, if the injury was caused by a premature fall of coal, and defendant was guilty of negligence in refusing, if it did refuse, to allow plaintiff to build a crib, and if such crib, if built, would have prevented the premature fall of coal, then it would be warranted in finding that such refusal, if any, to allow plaintiff to build a crib, was the proximate cause of his injury; and, if the injuries were received in the usual course of, and arose out of, his employment, he would be entitled to recover, although he was, at the time, working in his own working place.  The exceptions urged to this instruction are, in substance, that there was no evidence on which to base same, and that cribs are not customarily, and could not advantageously, be used to prevent the premature fall of coal.  Upon plaintiff's theory, the fall of the

3. MINES AND MINERALS : miner's working place: instructions.

coal was due to unusual conditions prevailing in the room in which plaintiff was working, and that, if a crib had been constructed, so as to support the overhanging slate, the alleged premature fall thereof might have been avoided. There was some evidence tending to show that a prop already in position was not strong enough to prevent the fall. Slate and draw slate accompanied the coal when it fell, and plaintiff claimed that he was struck by the piece of slate that projected above the coal, referred to above. This instruction was preceded by a full and comprehensive statement of the duty of defendant to furnish plaintiff all reasonably necessary props and sprags, and of plaintiff to use the same wherever reasonably necessary to make his working place safe, and to observe and obey the directions of defendant's mine foreman to make his working place reasonably safe and to exercise reasonable care, and also as to plaintiff's right to build a crib, and the duty of defendant to permit him to do so. Taken in connection with the charge as a whole, as applied to the testimony, we think the instruction unobjectionable.

IV. The court refused to give 18 separate instructions requested by counsel for appellant. Complaint is also made of this ruling. Proper exceptions were not preserved thereto. *Anthony v. O'Brien,* 188 Iowa 802; *Gibson v. Adams Express Co.,* 187 Iowa 1259. In view, however, of the importance of the case, we have carefully examined the record, and compared the requested instructions with the court's charge, and find that many propositions set forth in the requested instructions were embodied therein; that, in fact, practically all that could properly have been given are covered thereby. The issues were fairly and fully submitted to the jury by the court.

V. Counsel for appellee, while cross-examining one or more of defendant's witnesses, propounded questions of doubtful propriety, to which objections were overruled. It also appears that, during his argument to

4. TRIAL: misconduct of counsel.

the jury, he referred to some matters not within the record, which is somewhat enlivened by the crimination and recrimina-

tion of counsel.   The attorneys for appellee seek to confirm, by the citation of several prior decisions of this court, their charges against the senior counsel for appellant that he, with more or less regularity, violates the rules, enforcement of which he prays in this case.   Whether it is the desire of counsel for appellee to have the court treat these charges as *res adjudicata* or not, we are not materially aided thereby.   The record discloses that, upon objection to the alleged improper argument of counsel for appellee, the court, in its ruling, in effect cautioned the jury not to consider matters outside of the record.   As we have often said, some latitude must be allowed to counsel in argument. While some of the remarks complained of cannot be approved, we are convinced, in view of the observations of the court, that no prejudice resulted therefrom.

VI.   It is also urged by counsel for appellant that the verdict of the jury is not supported by the evidence.   The case is a close one, but there is such dispute in testimony as to justify its submission to the jury.

Since we find no error in the record, the judgment of the court below must be, and is,—*Affirmed.*

WEAVER, C. J., LADD and ARTHUR, JJ., concur.