GLADYS S. NICHOLSON, administratrix cum testamento annexo of estate of WINFRED VINCENT, appellee, v. CITY OF DES MOINES, appellant.

No. 48619.

(Reported in 67 N.W.2d 533)

DECEMBER 14, 1954.

Harold H. Newcomb, Frank D. Bianco and Don C. Swanson, all of Des Moines, for appellant.

Dickinson, Throckmorton, Keir, Parker & Mannheimer, of Des Moines, for appellee.

THOMPSON, J.— I. This case was before us on a prior appeal, taken by the plaintiff from a verdict and judgment in favor of the defendant by direction of the court. We reversed,

holding that the question of defendant's negligence was for the jury. Nicholson v. City of Des Moines, 245 Iowa 270, 60 N.W.2d 240. The facts shown by the plaintiff's evidence are set out in some detail in our former opinion and we see no good purpose to be served in going over them again. The defendant's first assignment of error raises the question of sufficiency of the evidence of negligence on the part of the defendant to generate a jury question. Our opinion on the first appeal is the law of the case and must be followed unless the evidence was materially different on the second trial, the record of which we now have before us for review. The only material difference we find is that the record now contains defendant's evidence, much of which tends to contradict plaintiff's case. But the rule that we must consider the evidence in the light most favorable to plaintiff is the same whether we have a case, as before, where a verdict was directed for defendant, or whether we have a case, as now, in which it is contended a verdict should have been so directed. Plaintiff's evidence was substantially the same on the second trial, and we are bound by our determination upon the first appeal that there was a jury question on the issue of defendant's negligence and proximate cause.

▮ II. Next the defendant-appellant urges plaintiff failed to carry the burden of showing the freedom of decedent from contributory negligence. It is recognized that the no-eyewitness rule is in effect here and raises a presumption of due care on the part of the deceased. Clearly there were no witnesses to the accident which caused the death of Winfred Vincent. But defendant says the presumption is rebuttable and contends it has been rebutted here. That the presumption may be conclusively overcome, see Crawford v. Chicago Great Western Ry. Co., 109 Iowa 433, 80 N.W. 519, and Ames v. Waterloo & Cedar Falls Rapid Transit Co., 120 Iowa 640, 95 N.W. 161. It is urged that it is so overcome in the instant case by evidence of intoxication of the deceased at the time the accident must have occurred. This is supplied by the opinion of the driver of the bus on which Mr. Vincent rode to a point near the place where he met his death by falling into an unguarded hole near the city sidewalk; by evidence he had frequented a tavern for some hours during the evening; and by the testimony of Dr. Albert Shaw, a licensed

physician who was at the time coroner of Polk County. Doctor Shaw expressed the expert opinion that Mr. Vincent's death occurred about 3 a.m. on March 25, 1952. He had last been seen by the driver when he alighted from the bus at 11:30 p.m. on March 24. His body was found in the pit about 7:30 a.m. on the 25th. Doctor Shaw was permitted to say that a blood test which he had caused to be made as a part of his autopsy on the body of the deceased showed 119 milligrams of alcohol per 100 cubic centimeters of blood. It is recognized that 150 milligrams per 100 cubic centimeters in the blood is evidence of intoxication. Doctor Shaw then testified alcohol is oxidized in the blood of a living person: "As near as I recall there is no exact rate, but the average rate is around ten milligrams per hour." Taking his opinion that death occurred at 3 a.m., at which time there were 119 milligrams per 100 cubic centimeters in his blood, and assuming he had lived without further drinking of intoxicating liquors since 11:30 p.m., or three and one-half hours, it is argued he must have then had 154 milligrams per 100 cubic centimeters because there had been three and one-half hours of oxidation at 10 milligrams per hour. Ergo, says the defendant, it is conclusively proven the deceased was intoxicated at the time of the fall into the pit. From this it is next urged contributory negligence is conclusively shown as a matter of law, because the intoxication must have contributed to the accident.

██ It will be observed defendant's position here rests upon a foundation of opinion evidence, expert and otherwise. The driver's statement that Vincent was intoxicated when he left the bus is clearly opinion. Doctor Shaw's estimate of the time of death is likewise opinion, as is his admittedly somewhat uncertain statement of the rate of oxidation of alcohol from the blood stream. Opinion evidence is seldom conclusive, even when uncontradicted. It is for the trier of the facts to evaluate it. We said in Wood v. Wood, 220 Iowa 441, 444, 262 N.W. 773, 774: "It is the settled rule that the trier of fact is not ordinarily bound to accept the opinions and conclusions of witnesses, even though undisputed by other opinion witnesses." To the same effect are Fowle v. Parsons, 160 Iowa 454, 141 N.W. 1049, 45 L. R. A., N. S., 181, Moore v. Chicago, Rock Island & Pacific Ry.

**324**

Co., 151 Iowa 353, 131 N.W. 30, and Fitter v. Iowa Telephone Co., 143 Iowa 689, 121 N.W. 48. It is apparent the showing of deceased's intoxication was not as conclusive as defendant thinks, but his condition was a fact question for the jury.

██ It is also true that even if the fact of intoxication were conceded there would still be a jury question whether it constituted negligence causing or contributing to his injuries and death. Intoxication in and of itself is not, as defendant seems to contend, conclusive evidence of contributory negligence. The true rule is laid down in Cramer v. The City of Burlington, 42 Iowa 315, 320, where it is said: "Whilst the being abroad in the streets of a city, in a state of intoxication, is not negligence as a matter of law, still, it is a circumstance or condition, from which the jury may find the existence of negligence as a fact." Again, on page 322, is this: "The jury should have been instructed that * * * the intoxication of plaintiff should not defeat his recovery, if it did not contribute to the injury which he sustained."

Another case much in point on this question is Kingsley v. Mulhall, 95 Iowa 754, 64 N.W. 659, where it is said (page 755 of 95 Iowa, page 660 of 64 N.W.): "Whether the plaintiff was under the influence of intoxicating liquors at the time of his fall, and whether that was caused in part or in whole by his drinking, were questions of fact to be determined by the jury."

In Sylvester v. Incorporated Town of Casey, 110 Iowa 256, 260, 81 N.W. 455, 457, we disapproved an instruction which told the jury: " 'Intoxication is evidence of contributory negligence, and from it alone you may infer contributory negligence.' "; and we approved this statement by the Wisconsin Supreme Court in Ward v. Chicago, St. P., M. & O. Ry. Co., 85 Wis. 601, 605, 55 N.W. 771, 772: "Drunkenness is not negligence per se, nor unless it contributes to the accident or injury. If it did not, then it is a matter of no concern to the defendant."

The questions whether the deceased was intoxicated and whether such intoxication, if found to exist, contributed to his injury, were both for the jury. The inference of due care arising from the no-eyewitness rule was not destroyed as a matter of law by any evidence tending to show the deceased's intoxication. The court's instructions, particularly Instruction No. 12, properly submitted these questions to the jury.

III. Defendant predicates error upon the refusal of the trial court to give its requested Instructions Nos. 6 and 7. These are too long to be set out in full. It is sufficient to say that, so far as they embody correct principles of law applicable to the facts in the case, they were in effect covered by instructions given by the court upon its own motion. Instruction No. 6 dealt largely with the question of sobriety, and we think the court adequately covered this matter, in accordance with our discussion in Division II, in the instructions given. Instruction No. 7 was in accordance with the instructions of the court. It did ask a more specific reference to the matter of deceased's knowledge of the condition of the walk, in this way:

"If plaintiff's decedent, as a reasonably prudent person, knew, or in the exercise of ordinary care should have known of the hazard, if any, as it existed at the time he is alleged to have been walking on the cinder path in question, yet failed to exercise ordinary care for his own protection from such hazard, he would be guilty of contributory negligence."

We think this sufficiently covered by Instruction No. 17, in which the court told the jury that in determining the matter of contributory negligence it might consider all the facts and circumstances surrounding the transaction. It is obviously not possible for the trial court to cover each facet of the evidence in detail in its instructions, and it should not emphasize certain aspects of the testimony or inferences to be drawn from the record while omitting others. The question of deceased's knowledge or means of knowledge was one of the "facts and circumstances" shown by the record which the jury was directed to consider. We think no more specific reference was required. State v. Laughlin, 73 Iowa 351, 35 N.W. 448; Adami v. Fowler & Wilson Coal Co., 189 Iowa 995, 179 N.W. 422; Thomas v. Charter, 224 Iowa 1278, 278 N.W. 920.

IV. Defendant complains because the court permitted the introduction of evidence showing that the deceased had, some two years before his death, conveyed a residence property which he had owned in Des Moines to a daughter. Evidence of the value of the property was also received. We are cited to no

authority holding this evidence inadmissible, and we know of none. It was properly received as evidence of accumulations of property made by the deceased during his lifetime. In Spaulding v. Chicago, St. Paul & Kansas City Ry. Co., 98 Iowa 205, 67 N.W. 227, we held it was proper to permit a sister of the decedent to testify he had sent her money at various times and had purchased life insurance. We said (page 213 of 98 Iowa, page 230 of 67 N.W.) : "It was competent to show the amount of money which he had sent to the witness and to others, as tending to show his ability to earn money, and his habits with respect to saving it; and for the same reason it was competent to show that he had invested some of his earnings in life insurance."

The complaint at this point is without merit.

V. Plaintiff introduced evidence tending to show the defendant had made changes in the condition of the accident scene, particularly in regard to the erection of protecting barricades, after the accident. It is doubtful that defendant saved the point by any proper objections to the evidence. Much of it came in without objection. Defendant then moved to strike the testimony as to a change in the barricade. A ruling on its motion was at first reserved, but a short time later the court sustained it and admonished the jury to disregard the testimony concerning the erection of a protecting fence after the time of the accident. It is the evident thought of defendant-city that this evidence was so prejudicial its effect upon the jury could not be eradicated by a later ruling withdrawing it and admonishing the jury to give it no attention or weight. The trial court has a large measure of discretion in these matters, and a manifest abuse must appear before we will interfere. It is to be noted the defendant made no request for a mistrial at the time of the court's ruling and brought its supposed dissatisfaction to the attention of the court only by its motion for a new trial. We doubt the defendant is now in a position to complain. Its motion to strike was granted and it indicated no complaint until the trial had been concluded and had resulted in an adverse verdict and judgment. Surely fairness to the trial court required that, if it felt the court's ruling was insufficient to remove the supposed prejudice, the court should be promptly advised and given an

opportunity to make such further correction of the alleged error as was possible. We do not intimate that any further ruling was required; without holding that it was error to admit the testimony as to changed conditions after the accident, we are clear the court did not abuse its discretion in holding, in its ruling upon the motion for new trial, that no prejudice to the defendant resulted. See Bachelder v. Woodside, 233 Iowa 967, 9 N.W.2d 464, and cases cited.

 VI. Doris Stovall, a daughter of deceased, was permitted over objection of the defendant to give an estimate of her father's annual earnings for the five years immediately preceding his death. This, the defendant thinks, was error. It is a generally accepted rule that where it is certain damage has resulted, uncertainty as to the amount will not preclude recovery. There must be some evidence from which the jury may make its determination; but this need not be so definite as to be capable of exact mathematical computation. All that is required is that the plaintiff produce the best evidence available and that this evidence afford a reasonable basis for estimating the loss. 15 Am. Jur., Damages, section 23, pages 414, 415.

 With these rules in mind, we turn to the record in the case at bar. Winfred Vincent was dead, and apparently he left no record of his earnings. He was seventy-two years of age, in apparent good health, and followed the trade of a carpenter. The exact question before us is whether his daughter should have been permitted to give her estimate as to his earnings during the years immediately preceding his death. We have held repeatedly that testimony as to such earnings is material, and the defendant does not dispute this. But it thinks Mrs. Stovall's testimony was an unallowable opinion or conclusion. Generally, a nonexpert witness may not state his opinions; but he may do so if he has had special opportunities to observe, better than the jury would have, and if he is qualified to draw the proper inferences from the facts which have been available to him. 32 C. J. S., Evidence, section 455, page 94. Even though not a skilled observer he may have had a special experience which would enable him to draw a more accurate inference than the trier of the facts. Likewise, the trial court has a considerable

discretion in determining whether a proposed witness is sufficiently qualified to be permitted to express an opinion. 32 C. J. S., Evidence, section 458. It is also held that even slight qualifications will be sufficient to justify the court in permitting the witness to express an opinion, and the lack of strong qualifications will affect the weight rather than the admissibility of his evidence. Cincinnati St. Ry. Co. v. Hickey, 29 Ohio App. 399, 163 N.E. 310; Lutz v. Allegheny County, 327 Pa. 587, 195 A. 1; Davis v. Southern Surety Co., 302 Pa. 21, 153 A. 119; Yorkshire Worsted Mills v. National Transit Co., 28 Del. County Rep. 402.

Mrs. Stovall testified that she lived in Des Moines and saw her father frequently. She knew of his work and had seen him at various times at work on some of his projects. She knew in general that he was a carpenter and contractor, built buildings and did a good deal of repair work. About two years before his death he showed her a book in which he kept his accounts. She was permitted to answer this question: "Based upon the knowledge that you have and concerning which you have testified with respect to the carpentry and contracting operations of your father, have you an opinion as to his annual income, say, for the last five years of his life? A. Yes. Q. You may give that opinion. A. Approximately $4000 a year, four to five." She further testified her father was an industrious man, and gave further details as to the times she had observed him at work.

It is evident Mrs. Stovall, although not an expert witness, had a much better opportunity to estimate the deceased's earnings than members of the jury would have had. She saw her father frequently, saw him at work and knew in general the nature of his projects and many of the buildings on which he worked, and had at one time seen his book of accounts which he kept in connection with his various contracts. We find no abuse of discretion on the part of the trial court in permitting her to give her estimate of Mr. Vincent's annual earnings. It was the best evidence obtainable on the subject; and we think any weakness of qualification of the witness went to the weight to be given her testimony rather than to its admissibility.

Factually the case of Sebille v. Dunn, R. I., 99 A. 831, 832, is much in point. The action was one for the wrongful death of Peter Sebille. He was a small farmer, raising vegetables and

fruits for the market. He performed most of the labor himself and kept no books showing his income. There was testimony from the decedent's children as to his gross and net income, based upon fragmentary statements made to them. The Rhode Island Court said: "Little, if any, [of the testimony] is based upon exact figures. It relates and is composed mostly of statements claimed to have been made from time to time by Peter A. Sebille to his children as to the amount he received from certain of his crops and their estimate as to the amount of his personal expenses and the expenses of maintaining the farm * * * and selling its products."

It is evident the witnesses were compelled to piece together fragmentary statements of the sale of crops and to make estimates of expenses of operation and so arrive at another estimate, that of the net income, or earnings, of the decedent. The court said: "We cannot say that from all of the testimony in the case a jury would be unable to make such a computation of the decedent's net income as would be reasonable and fair * * *."

The question is not free from difficulty, but we conclude there was no error in the admission of the testimony of Mrs. Stovall.

VII. Finally, defendant contends there was misconduct of the jury and the verdict was the result of passion and prejudice, to which improper argument of plaintiff's counsel contributed. Since no record was made of the claimed improper argument, and no exception taken, and we have no knowledge of it except as appeared in the motion for new trial through the statement of defendant's counsel, we would be justified in disregarding this complaint. We think in any event the matter comes under the rule that the trial court has a considerable discretion in determining whether alleged misconduct, if there was such, was prejudicial. State v. Jensen, 245 Iowa 1363, 1368, 66 N.W.2d 480, 482. Even if there was adequate proof that the alleged remarks of plaintiff's counsel were actually made, we could not say the trial court abused its discretion in refusing to grant a new trial on this ground.

VIII. But the defendant thinks there was such misconduct of the jury as to vitiate the verdict. Five jurors made

affidavits, which were attached to the motion for new trial. Each of the affiants said that the jurors took a vote as to "whether the negligence of Mr. Vincent was less than the negligence of the city" and it was decided the city was more negligent. From this the defendant argues the jury adopted the doctrine of comparative negligence, contrary to the instructions of the court and the law of the State of Iowa. It will be noted the affidavits hardly support the conclusion that Mr. Vincent was found negligent to any extent. That he was less negligent than the city might mean he was not negligent at all. The negligence of the city would be more than that of the deceased if it was one hundred per cent and his none. But, if we assume, as defendant necessarily must, that the jury found him negligent to some extent, we still cannot say the jury may so impeach its verdict. We have said:

"It is apparent from the reading of the affidavits in question that the jury either misunderstood or ignored the instructions of the court, or that the jury based its verdict upon a measure of damage concerning which no evidence had been introduced. * * * There is no reason for the jury to misapprehend the instructions in the instant case and a claimed misapprehension cannot be considered to impeach a verdict." Gregory v. Kirkman Consolidated Ind. Sch. Dist., 193 Iowa 579, 582, 187 N.W. 553, 554.

See also Christ v. City of Webster City, 105 Iowa 119, 120, 121, 74 N.W. 743, and cases cited.

At this point the defendant relies upon and cites at length from Hall v. City of West Des Moines, 245 Iowa 458, 62 N.W.2d 734. The distinction between that case and the one at bar is obvious. We were there concerned with the question whether the trial court had abused its discretion in granting a new trial. No new trial was granted here. Our decision in the Hall case did not go to the extent of holding there was reversible error in the trial; only that the trial court did not abuse its discretion. We said (page 463 of 245 Iowa, page 737 of 62 N.W.2d): "It is not necessary that there be reversible error * * *." And we have frequently said the trial court has a greater discretion in granting new trials than the appellate court. Burke v. Reiter, 241 Iowa 807, 817, 42 N.W.2d 907, 913,

and cases cited. We do not here have the question whether the trial court would have committed error if a new trial had been granted. Its instructions were clear on the question of contributory negligence, and the jurors in returning a verdict for the plaintiff necessarily found the deceased was not guilty of any negligence which contributed directly or in any degree to his injuries and damage. They cannot now be permitted to impeach their verdict by showing they disregarded the instructions.

One of the jurors in his affidavit also said he had expressed the thought that social security for the deceased would have been about $85 per month.

In Conway v. Alexander, 200 Iowa 705, 710, 205 N.W. 351, 354, we said: "By the affidavit of Juror Spencer, it appears that he estimated the profits of a dealer at 25 per cent. This estimate had nothing to do with any evidence in the case. It contradicted no evidence; it confirmed no evidence. It discloses that the jurors were meddling with subjects that were irrelevant. * * * The trial court thought that such an incident was not of such a nature as to require a new trial. It does not impress us as of sufficient importance to call for our interference with the discretion of the trial court."

See also State v. Cook, 227 Iowa 1212, 1214, 290 N.W. 550.

IX. Further prejudicial misconduct of the jury is thought by defendant to appear from the affidavits to the effect that the various members of the jury had various ideas as to the amount which should be awarded to the plaintiff. Juror Petzold says: "* * * I thought $2500 was enough, someone else said $7500 which I thought was too high, and we finally agreed on $5000 and I wasn't satisfied as I thought there were a lot of questions that hadn't been discussed in the case." Juror Cope gave this version: "* * * we just each wrote on a slip of paper the amount we thought should be allowed. Then we discussed these various figures and finally arrived at the sum of $5000. Several jurors thought it should be higher and several lower and this was a compromise figure." The defendant thinks this was a "compromise verdict" such as to show misconduct of the jury and which vitiated the entire proceedings. We are unable to agree. It is apparent this was not a "quotient" verdict. While according to the affidavit of the juror Cope each wrote on

a slip of paper the amount he thought proper to award the plaintiff, there was no agreement to add the amounts and divide by twelve. It was at best, or worst, no more than a means of ascertaining the initial opinion of each juror. If we should adopt the rule contended for by the defendant we would thereby make it a practical impossibility for juries to function in negligence cases where a verdict for the plaintiff is to be found. The possibility that each of the twelve jurors would have in mind at the outset the same amount to be awarded is so remote that it can be given little consideration. Necessarily the jurors must discuss the various amounts thought proper by each, and some means of agreement must be found if any verdict is to be returned. If this is done by discussion and reason it is not objectionable, and the affidavits show nothing more here. It is quite likely some if not all of the jurors were not entirely pleased with the amount finally agreed upon. Pride of opinion or a belief in the superiority of one's own judgment will often preclude total satisfaction with the verdict reached.

In 53 Am. Jur., Trial, section 911, it is said: "While the verdict of the jury should represent the opinions of each individual juror * * * it does not follow that opinions may not be changed by conference in the jury room. * * * The law contemplates that jurors shall harmonize their views by a discussion of the evidence, if possible."

It has been often held that jurors, when the damages are unliquidated, may compromise as to the amount to be awarded. Bryson v. Chicago, Burlington & Quincy Ry. Co., 89 Iowa 677, 685, 57 N.W. 430, 432, 433; Noble v. White, 103 Iowa 352, 362, 72 N.W. 556, 558.

In State v. Dudley, 147 Iowa 645, 653, 126 N.W. 812, 815, we said: "Affidavits of jurors that they have been unduly influenced by their fellows, or of the reasons for assenting to the verdict, or of improper arguments resorted to in the jury room, or that they did not assent to the verdict, or that it was not the result of their deliberate judgment, or they did not understand the instructions of the court as these matters inhere in the verdict, are incompetent, and cannot be received to impeach the jury's findings."

It is unthinkable that a juror who by fair discussion and analysis of the evidence has agreed with his fellows upon an amount may later be permitted to impeach the verdict by saying that, after all, he is dissatisfied and thinks the sum he first had in mind was best.

We find no error.—Affirmed.

GARFIELD, C. J., and BLISS, LARSON, MULRONEY, OLIVER, and SMITH, JJ., concur.

WENNERSTRUM, J., dissents.

WENNERSTRUM, J. (dissenting)—I respectfully dissent. The majority opinion states the only material difference in the present record from the former appeal is that the defendant's evidence is shown in the present record. Inasmuch as the plaintiff's evidence is approximately the same as in the first trial I would reverse the trial court for the reasons stated in the dissent filed in the prior appeal.