**RANCHO GRANDE, INC., an Iowa Corporation, Appellant,**

v.

**IOWA STATE HIGHWAY COMMISSION, Valley Bank and Trust Company, Des Moines, Iowa, and Polk County, Iowa, Appellees.**

**No. 52785.**

Supreme Court of Iowa.

Feb. 6, 1968.

Abramson, Myers, Myers & Anderson, Des Moines, for appellant.

Richard L. Turner, Atty. Gen., L. Michael McGrane, Asst. Atty. Gen., and Arthur C. Hedberg, Jr., Des Moines, for appellee, Iowa State Highway Commission.

MOORE, Justice.

This case involves an appeal to the district court from a condemnation commission award of $22,500 for the partial taking of plaintiff's land for Primary Road 1–235. Plaintiff's petition alleged damages of $126,000. On trial the jury awarded $20,-400. Thereafter plaintiff filed a motion for new trial and related motions based primarily on a claim of misconduct by the jury. Plaintiff has appealed following adverse rulings on said motions.

Plaintiff asserts the trial court erred in (1) denying plaintiff's motion for a new trial on the grounds of jury misconduct (a) for failure to follow the court's instructions with respect to the measure of damages, (b) giving consideration in its award to benefits accruing to plaintiff, (2) denying plaintiff's application for examination of jurors and (3) denying its offer of proof of the claimed misconduct.

It is undisputed plaintiff on February 21, 1966 was the owner of Lot 19, in Ashworth, an official plat in the town of Windsor Heights. It is near the west city limits of Des Moines. It consists of a triangular

tract of 14.1 acres with access to sewer and water. The C. M. & St. Paul Railroad is contiguous with the southwest boundary of the plat. Access to the property was from 73rd Street over the railroad tracks or from Center Street by road.

Walnut Creek runs south across the northeast corner of the plat. The question of flooding and the extent thereof was a point of sharp disagreement between the several witnesses called by the parties. Plaintiff's witnesses testified there was no or very little flooding from the creek. Defendant's witnesses testified there was considerable flooding which adversely affected the value of the tract.

The land appropriated by condemnation consists of a fee to the south 3.7 acres of Lot 19 and an easement along the creek bed of 1.4 acres. The perpetual easement is for the purpose of straightening, relocation and maintenance of the creek.

The description and the extent of the portions of Lot 19 taken by condemnation are not in dispute. They were not matters of disagreement between the witnesses on trial of the issues.

Mrs. Billie Velma Van Dyck, a majority stockholder in plaintiff corporation, testified she bought the property in 1941 and was living thereon in a trailer at trial time. She testified the fair market value of Lot 19 before condemnation was "around $12,500 per acre" and after condemnation, "I would say it wouldn't leave me anything to do anything with".

Plaintiff called several witnesses each of whom after stating his experience and qualifications as an appraiser and relating his study of the subject property gave his opinion of the value of the land involved.

Harold E. Anderson expressed the opinion the value before condemnation was $119,000, after condemnation $45,000, a difference of $74,000. He stated "It represents a taking of $8500 per acre. Damage to the remainder of the land of $3,500 an acre".

He further testified this represents a value of the remaining land of $5000 per acre.

Donald Usher testified the value before condemnation was $9000 per acre and the after value and damage to the remaining land was reduced to $4500. He stated the remaining land was reduced $40,500 to which he added the taking of five acres at $9000 per acre or $45,000 and therefore the resulting damage was $85,000.

Lew Clarkson fixed the value of Lot 19 at $140,000 before condemnation. He assessed $10,000 an acre for the five acres taken and $8000 an acre for two acres he considered isolated by the creek and opined the resulting damage was $65,000.

Donald Jefferson estimated the value before condemnation as $189,000 and after $90,000 for a difference of $99,000. He testified he figured the before value on the basis of $3.00 per square foot or around $13,500 per acre.

Defendant, Iowa State Highway Commission, called three appraisers each of whom after stating his experience and qualifications and relating his study of the property gave estimates of before and after condemnation value thereof.

W. W. Burns estimated the value before condemnation at $67,000 and after $46,700 for a difference of $20,800. He was not asked on direct examination to estimate per acre value.

His cross-examination includes:

"Q. What is the average per acre? All we have to do, wouldn't we, is to divide $67,500.00 by 14 acres, the size of the tract; wouldn't that give us a value per acre that you put on that tract? A. If you deducted the improvements which I figured in there, yes, you are correct.

"Q. What would that resultant figure be then? A. I would average, including the creek and all the land, it would average, if you wanted to do it that way which we do not do, it would be about $3,812 an acre if I am correct in my mathematics."

Harry Winegar estimated the before value at $20,500, after value at $10,500 for a difference of $10,000.

Harold Calkins estimated the before value at $67,250, after value at $47,250 for a difference of $20,000.

Calkins' cross-examination by plaintiff's counsel includes:

"Q. Well, do you consider the portion in the small triangle here that is going to be used for the relocation of the creek as having any utility value, or any value to a property owner? A. Well, it is my opinion it had very little value to start with.

"Q. Well, of course, I didn't ask you that question. What I would like to know, after the creek is relocated through this portion of the property shown in this small triangle, will that portion of the property have any value to a property owner? A. Very little.

"Q. So that for all intents and purposes would it be a fair statement to make that the property shown in the small triangle is being lost to the property owner by the condemnation? A. I think that this parcel in here by the straightening of the channel is going to enhance the value of this property over here more than it was previously; it can be sold to an adjoining property owner and be usable."

The court's instructions to the jury, to which neither party took any exception or made objection, include: "Instruction No. 5. The burden of proof is upon the plaintiff to establish by a preponderance of the evidence, the 'fair and just compensation' to which it is entitled, which, under the law, is the difference in the fair and reasonable market value of its property as a whole immediately before, and the fair and reasonable market value of that portion of said property remaining in the plaintiff, immediately after the appropriation and condemnation as made by the defendant on February 21, 1966.

"In making the allowance referred to, the law provides that you disregard entirely and exclude from your calculations any and all benefits to the remaining part of plaintiff's property, which have resulted or may result in the future from the improvements of said highway, if there are any such benefits.

"Instruction No. 17. The plaintiff in its petition has asked for damages because of the condemnation of a portion of its land in the sum of $126,000.00, and in no event can your verdict exceed that amount. This limitation as to the amount is not stated as an indication that such an amount is proper to be allowed by the jury, but as being the amount claimed in plaintiff's petition and which, therefore, limits the amount of your verdict.

"In the verdict, the form of which is submitted herewith, you will insert the amount which you find to be the difference between the fair and reasonable market value of the property in question before the condemnation on February 21, 1966, and the fair and reasonable market value of the portion remaining in the plaintiff after the taking by the Iowa State Highway Commission of the portion so taken by it, sign the same by one of your number as foreman and return with it into open court."

Using the form submitted the jury inserted $20,400 as the amount of plaintiff's award and returned a verdict for plaintiff for that amount. Thereafter a proper judgment in such a proceeding was entered.

Plaintiff's motion for new trial, as amended, included the assertions the jury had not followed the court's instructions to make the award based on the difference of the reasonable market value of the property before and after condemnation but found per acre value and then multiplied by 5.1 acres to arrive at plaintiff's damages.

Plaintiff further alleged the jury in their leliberation considered the relocation of Walnut Creek would inure to plaintiff's benefit.

As a part of said motion for new trial this affidavit of Frank D. Anderson, one of plaintiff's attorneys, was attached thereto: "I, Frank D. Anderson, being first duly sworn on oath, depose and state that subsequent to the return of verdict by the jury herein on May 27, 1966, I personally interrogated various members of said jury. Some of said jurors advised me that the jury did not arrive at the amount of plaintiff's damage by taking the difference between the fair and reasonable market value of plaintiff's entire property before the taking and the fair and reasonable market value of the plaintiff's property immediately after the taking, as instructed by the Court, but on the contrary the jury arrived at the amount of plaintiff's damage by taking a value of $4,000.00 per acre for the 5.1 acres taken by the condemnation.

"Various members of the jury also informed me that in arriving at the amount of plaintiff's damage, they considered in their deliberations the fact that the relocation of Walnut Creek through plaintiff's land as a result of this condemnation would benefit the plaintiff in that more land would be available on the east side of the relocated creek than was available prior thereto.

"I endeavored to obtain Affidavits from various of the jurors with whom I conferred but they refused to do so because they felt they were not required under the law to sign such Affidavit and did not want to become involved with respect thereto."

Plaintiff also filed an application for an order for the examination of various jurors and attached a copy of Mr. Anderson's affidavit thereto.

Defendant's resistance to plaintiff's motion for new trial asserted the verdict was within the evidence, the deliberations of the jury inhere in the verdict, the presumption is the jury followed the instructions of the court and there was no indication passion or prejudice entered into the jury's deliberation.

On submission of the application and motion the trial court following some statements by Mr. Myers, one of plaintiff's attorneys, stated: "In connection with this matter, I think I told you previously that after this verdict was brought in a number of the jurors—I wouldn't say exactly what number, but I think at least five—came to me and wanted to know if they had to answer questions and be interrogated by your office. Some of them even had the impression that they were being directed to go to your office, and I, of course, told them that it's up to them, if they wanted to talk with anybody or not. It was purely a matter of their own desires in the matter."

It thus appeared the jurors had expressed resentment to interrogation by plaintiff's counsel which may have been one of the reasons for the trial court's denial of an order they be subpoenaed and brought before the court for questioning.

Mr. Myers then made an offer of proof wherein he stated that if certain four named jurors were called to testify they would state the jury arrived at their verdict by taking the fair and reasonable per acre value at $4,000 and considered the land taken as 5.1 acres and the amount of $20,400 was based on those computations and not on before and after fair market value and the difference thereof. He further stated they would testify the jury took into consideration the fact plaintiff would receive some benefits by reason of the relocation of Walnut Creek.

This offer of proof was refused. Later plaintiff's motion for new trial was denied.

I. Rule 116, Rules of Civil Procedure, provides: "Proof of facts in motions. Evidence to sustain or resist a motion may be by affidavit or in any other form to which the parties agree or the court directs. The court may require any affiant to appear for cross-examination." This gives the trial court discretion in determining whether it will direct the taking of evidence to sustain a motion for new

trial. In Skinner v. Cron, 206 Iowa 338, 220 N.W. 341, written before the adoption of rule 116, we recognize the trial court has such discretion.

In Jurgens v. Davenport, R. I. & N. W. Ry. Co., 249 Iowa 711, 88 N.W.2d 797, we affirm the trial court's refusal to call jurors for oral examination based on an attorney's affidavit of misconduct of the jury. We therein say: " * * * we think the court should not be required, upon a hearsay affidavit, to order the jurors to appear for such examination unless, at least, the affidavit itself makes a clear showing of some misconduct sufficient to vitiate the verdict if the testimony adduced on hearing substantiates it." Loc. cit. page 722, 249 Iowa, page 804, 88 N.W.2d.

We are not persuaded the trial court abused his discretion in refusing to have the jurors subpoenaed and examined.

■ II. The grounds upon which the jurors assent to the verdict, where there has been no misconduct in bringing extraneous matters to the jurors' attention can not be shown to impeach it, nor is it competent in this way to show the jury misunderstood the law which was correctly stated in the instructions. Gregory v. Kirkman Cons. Ind. Sch. Dist., 193 Iowa 579, 582, 187 N.W. 553, 554; Doyle v. Dugan, 229 Iowa 724, 734, 295 N.W. 128, 133; Nicholson v. City of Des Moines, 246 Iowa 318, 332, 67 N.W.2d 533, 541.

In Long v. Gilchrist, 251 Iowa 1294, 1300, 105 N.W.2d 82, 86, we quote this from Wright v. Illinois and Mississippi Telegraph Co., 20 Iowa 195, 210: "That affidavits of jurors may be received for the purpose of avoiding a verdict, to show any matter occurring during the trial or in the jury room, which does not essentially inhere in the verdict itself: as that a juror was improperly approached by a party, his agent, or attorney; that witnesses or others conversed as to the facts or merits of the cause, out of court and in the presence of jurors; that the verdict was determined by aggregation and average or by lot, or by game of chance or other artifice or improper manner; but that such affidavit to avoid the verdict may not be received to show any matter which does essentially inhere in the verdict itself, as that the juror did not assent to the verdict; that he misunderstood the instructions of the court; the statements of the witnesses or the pleadings in the case; that he was unduly influenced by the statements or otherwise of his fellow jurors, or mistaken in his calculations of judgment, or other matter resting alone in the juror's breast."

The mass of back-and-forth arguments which no doubt occur in the jury room prior to the verdict are matters which inhere in the verdict although they oftentimes roam far afield. If we were to analyze and review and sometimes reject as misconduct all arguments and discussions in a jury room, there would never be a finality as to jury verdicts. Long v. Gilbert, supra.

III. Plaintiff relies heavily on Skinner v. Cron, supra, 206 Iowa 338, 220 N.W. 341, in which we reversed the trial court for refusing to take testimony of jurors where an attorney's affidavit was made a part of a motion for new trial. The jurors were in the court room when the motion was presented. It is distinguishable on the facts, particularly the type of jury misconduct charged. In Skinner the affidavit charged some of the jurors went to the intersection where the accident involved occurred and made observations for the purpose of considering the credibility of a certain witness. At pages 343, 344, 206 Iowa, page 343, 220 N.W., we say: "We have held that, where jurors consider matters not in evidence, and not produced on the trial, which it is reasonably probable influenced the verdict, it is such misconduct as to require a new trial."

■ In the case at bar no claim is made the jury considered extraneous matters. Plaintiff by its several witnesses and on

cross-examination of a witness for defendant stressed the importance of per acre value and its consideration as bearing on plaintiff's damages. It necessarily follows the jury considered and discussed this approach to determine the award to be made. The only evidence of no damage because of straightening the creek was brought out by plaintiff's cross-examination of the witness Calkins. It was the jury's duty to consider all the evidence within the limitations set out in the instructions.

IV. The trial court in instruction 5 specifically directed the jury to "disregard entirely and exclude from its calculations any and all benefits to the remaining part of plaintiff's property * * *." Instruction 17 required the jury to insert in the form of verdict submitted the amount found to be the difference between the before and after reasonable market value of plaintiff's property. It is presumed the jury obeyed the instructions. Beal v. Iowa State Highway Com., 209 Iowa 1308, 1311, 230 N.W. 302, 303, and citations.

V. The trial court has wide discretion in determining whether alleged misconduct of the jurors is prejudicial. Unless abuse of this discretion is shown his decision should not be reversed. Nicholson v. City of Des Moines, 246 Iowa 318, 329, 67 N.W.2d 533, 539; Turner v. Hansen, 247 Iowa 669, 674, 75 N.W.2d 341, 343; 39 Am. Jur., New Trial, section 73. The award made by the jury was within the estimates of the witnesses and was substantially just.

We are not persuaded the trial court erred in overruling plaintiff's motion for new trial.

We find no reversible error. Plaintiff's request that part of appeal costs be taxed against Iowa State Highway Commission, the only defendant participating in this case, is denied.

Affirmed.

All Justices concur.