Ruth M. PAIGE, Appellant,

v.

CITY OF CHARITON et al., Appellees.

No. 2–57770.

Supreme Court of Iowa.

April 20, 1977.

John A. Jarvis, Chariton, for appellant.

Paul F. Ahlers, Ahlers, Cooney, Dorweiler, Haynie & Smith, Des Moines, for appellee City of Chariton.

Richard D. Morr, Morr & Shelton, P.C., Chariton, for appellees White and Morris.

Heard before MOORE, C. J., and MASON, UHLENHOPP, HARRIS and McCORMICK, JJ.

HARRIS, Justice.

This tort suit was brought against a municipality and two policemen after plaintiff's arrest by city police. Trial to a jury resulted in a defendant's verdict. Questions on appeal relate to the setting aside of a default and a challenged jury instruction. We affirm the trial court.

On October 29, 1971 Ruth M. Paige (plaintiff) was driving on highway 34 in Lucas County. She was following her husband's farm tractor and hay wagon at a very slow speed, estimated at five miles per hour. Richard B. Morris, a Chariton police officer, noticed plaintiff and the traffic congestion developing behind her. Morris used a flashing red light, a siren, a horn, and hand motions in an attempt to stop plaintiff because of her slow rate of speed.

Plaintiff did not stop. Rather she increased her speed up to 55 miles per hour and proceeded, with Morris in pursuit, to her home in rural Lucas County. There ensued a scuffle between plaintiff and Morris. Morris claims plaintiff resisted arrest and asserts any force he used was necessary to accomplish the arrest. Plaintiff claims she did not resist arrest and Morris simply administered a beating. Eventually plaintiff's arrest was accomplished.

Plaintiff was charged with (1) willfully failing and refusing to comply with a lawful order or direction of a peace officer and (2) with driving a motor vehicle at such a slow speed as to impede or block the normal and reasonable movement of traffic, in violation of two local ordinances. Plaintiff was found guilty of both charges in Chariton police court but both convictions were dismissed on appeal to Lucas district court. This action was brought August 24, 1973 seeking compensatory and punitive damages. The suit alleged three causes of action: (1) assault and battery, (2) false imprisonment, and (3) malicious prosecution. On August 31, 1973 the Chariton city attorney (not the appellate counsel) filed general

appearances on behalf of the three defendants, the City of Chariton, Police Chief Vernon R. White, and Officer Richard B. Morris.

Notwithstanding negotiations for settlement and the fact the case was assigned for trial plaintiff's counsel acting ex parte, on April 25, 1974 sought and obtained a default judgment against all defendants. The default was granted by reason of defendant's failure to move or plead as required by rule 85, Rules of Civil Procedure.

On May 8, 1974 the City of Chariton by new counsel moved to set aside the default judgment and to allow filing of an answer submitted with the motion. Various grounds were cited in justification of the motion to set aside. The city alleged it had a meritorious defense. On May 20, 1974 new counsel appeared for White and Morris and moved to set aside the default judgment against them. The following day answers were filed for White and Morris. Notwithstanding plaintiff's resistance the trial court set aside the default judgment and the matter proceeded to trial. At trial White's motion for directed verdict was sustained. The case against the city and Morris was submitted to the jury which returned a verdict denying plaintiff any recovery.

I. In resisting defendant's motion to set aside the default judgment plaintiff sought to cross-examine three persons pursuant to rule 116, R.C.P. which states: "Evidence to sustain or resist a motion may be by affidavit or in any other form to which the parties agree or the court directs. The court *may* require any affiant to appear for cross-examination." (Emphasis supplied.)

■ Whether to require an affiant to appear for cross-examination is a matter of trial court discretion. *Rancho Grande, Inc. v. Iowa State Highway Com'n,* 261 Iowa 861, 867–868, 156 N.W.2d 293, 297–298 (1968); *Cogley v. Hy Vee Food Stores, Inc.,* 257 Iowa 1381, 1385–1386, 137 N.W.2d 310, 312–313 (1965); 60 C.J.S. Motions & Orders § 37(5), p. 51; 56 Am.Jur.2d, Motions, Rules, and Orders, § 25, pp. 20–21. See also § 4.1(36)(c), The Code.

The question becomes whether the trial court abused its discretion in not allowing plaintiff to cross-examine the three persons: John P. Killarney, an attorney for one of the insurers; Donald C. Schowalter, an insurance adjuster; and Oscar A. Stafford the former Chariton city attorney.

■ Killarney did not file an affidavit and hence was not an affiant. See Black's Law Dictionary, Rev. Fourth Ed., p. 79. It would be absurd to hold the trial court abused its discretion in not allowing Killarney's cross-examination.

■ Neither do we believe the trial court abused its discretion in not requiring cross-examination of Stafford and Schowalter. Their affidavits were on file 12 days prior to the hearing on the city's motion to set aside the default judgment. Plaintiff did not seek cross-examination in her resistance filed on the day of the hearing nor did she request cross-examination at the hearing. Stafford was present at the hearing. The trial court permitted plaintiff to cross-examine another witness. The request to cross-examine the three "affiants" was not made until four days after the hearing. It is true defendants White and Morris filed a motion to set aside the default on the date of the hearing. But none of the three named affiants filed affidavits in connection with the motion filed by White and Morris. There was no abuse of discretion in the trial court's refusal to require cross-examination. Plaintiff's first assignment is without merit.

II. In her second assignment plaintiff claims the trial court erred in setting aside the default judgment. The assignment is controlled by rule 236, R.C.P. which provides:

"On motion and for good cause shown, and upon such terms as the court prescribes, but not ex parte, the court may set aside a default or the judgment thereon, for mistake, inadvertence, surprise, excusable neglect or unavoidable casualty. Such motion must be filed promptly after the discovery of the grounds thereof, but not more

than sixty days after entry of the judgment. Its filing shall not affect the finality of the judgment or impair its operation."

■ A trial court is vested with broad discretion in ruling on a motion to set aside a default judgment. Such a ruling will be reversed on appeal only if this discretion is abused. Generally abuse will be found only where there is a lack of substantial evidence to support the trial court's ruling. We view the evidence in the light most favorable to the trial court's ruling and will uphold the same even where the trial court made no findings of fact or based its ruling upon a different ground. *Smiley v. Twin City Beef Co.,* 236 N.W.2d 356, 360–361 (Iowa 1975). See also *Williamson v. Casey,* 220 N.W.2d 638, 639–640 (Iowa 1974); *Dealers Warehouse Co. v. Wahl & Associates,* 216 N.W.2d 391, 394–395 (Iowa 1974).

■ The burden is upon the movant to show good cause as to one of the grounds stated in rule 236. "Good cause" for setting aside a default judgment is a sound, effective, truthful reason, something more than an excuse, a plea, an apology, an extenuation or some justification for the resulting effect. The movant must show his failure to defend was not due to his negligence, want of ordinary care or attention, or to his carelessness or inattention. The movant must affirmatively show he intended to defend and took steps to do so, but because of some misunderstanding, accident, mistake or excusable neglect failed to do so. *Flexsteel Ind., Inc. v. Morbern Ind. Ltd.,* 239 N.W.2d 593, 596 (Iowa 1976); *Dealers Warehouse, supra,* 216 N.W.2d at 394–395. By the plain language of rule 236 good cause must be based on (1) mistake, (2) inadvertence, (3) surprise, (4) excusable neglect, or (5) unavoidable casualty.

■ We find good cause for setting aside the default judgment on grounds of surprise and excusable neglect. Conduct on the part of plaintiff's counsel misled Stafford, and through him defendants' insurers, into believing the case was proceeding to trial. Plaintiff's counsel wrote to Stafford regarding possible settlement some four weeks before applying ex parte for default. The letter concluded: "I hope you will find the opportunity to respond promptly and will assist in getting a special late term jury trial date prior to which we can complete discovery, etc."

Defendants had been in default for almost six months when the letter was written. The letter made no complaint of defendants' failure to answer or to plead.

Four days after sending the letter plaintiff's counsel filed a certificate of readiness in accordance with rule 181, R.C.P. The certificate (official state bar form 175) certified issues were joined and the case was ready for trial. Plaintiff's counsel knew this was not true for reasons which he later urged as grounds for the default. Of course Stafford also knew the case was not properly at issue. But the notice tended to mislead Stafford into thinking plaintiff's counsel intended to overlook his tardiness in answering.

■ Without question defendants intended to defend the suit. Such intent is a circumstance which tends to show good cause. *Wharff v. Iowa Methodist Hospital,* 219 N.W.2d 18, 22 (Iowa 1974) and authorities. It is significant defendants moved promptly to set aside the default. The purpose of rule 236 is to allow determination of a controversy on its merits rather than on the basis of nonprejudicial inadvertence or mistake. *Wharff, supra,* 219 N.W.2d at 24.

Since we agree there was substantial evidence to support a finding of good cause on grounds of surprise and excusable neglect it cannot be said the trial court abused its discretion in setting aside the default judgment. Plaintiff's contention to the contrary is without merit.

III. Plaintiff's final assignment challenges an instruction regarding plaintiff's two convictions in police court. The instruction was given in connection with plaintiff's claim for malicious prosecution. The jury was told that if plaintiff was convicted in police court "* * * there was prima facie evidence of probable cause for the institution of said prosecution even

though the plaintiff was later acquitted of said offense in the District Court of Lucas County, Iowa. By 'prima facie' evidence of probable cause is meant a permissible inference that probable cause was present. This inference, however, is rebuttable and all the facts, circumstances and conditions in evidence should be considered in determining whether it has been rebutted and whether the plaintiff has established by a preponderance of the evidence that the defendant Morris lacked probable cause for instigating the plaintiff's prosecution, if he did so."

The elements of malicious prosecution were summarized in *Sarvold v. Dodson*, 237 N.W.2d 447, 448 (Iowa 1976):

"The elements of a malicious prosecution are: (1) a previous prosecution, (2) instigation or procurement thereof by defendant, (3) termination of the prosecution by an acquittal or discharge of plaintiff, (4) want of probable cause, (5) malice in bringing the prosecution on the part of the defendant, and (6) damage to plaintiff. (Authorities).

"The basis of an action for malicious prosecution consists of the wrongful initiation of an unsuccessful civil or criminal proceeding with malice and without probable cause. (Authorities)."

The question is whether a subsequently overturned magistrate court conviction is prima facie evidence of "probable cause" for the prosecution. Two cases addressed the issue in dictum. See *Miller v. Runkle*, 137 Iowa 155, 114 N.W. 611 (1908); *Olson v. Neal*, 63 Iowa 214, 18 N.W. 863 (1884). These cases support the instruction given by the trial court.

Looking to authorities elsewhere it appears the rule prevailing in many, perhaps a majority of, states is that a conviction, even though later reversed, is *conclusive* evidence of probable cause. The authorities recognize a second rule, sometimes stated as the minority rule, that such a conviction even though later reversed, is *prima facie* evidence of probable cause. See 54 C.J.S. Malicious Prosecution § 37, pp. 1000–1001; 52 Am.Jur.2d, Malicious Prosecution, § 179, pp. 297–299; Annot., 86 A.L.R.2d 1090.

The trial court, prompted by language in *Olson, supra*, and *Miller, supra*, instructed the jury to apply the minority rule. The minority rule was more favorable to plaintiff than the majority rule. A conclusive presumption would be more damaging to plaintiff's case than a prima facie inference.

Faced with a choice between the "prima facie inference" rule embodied in the challenged instruction, and the "conclusive presumption" rule plaintiff suggests we adopt a third view. The third view would attribute neither a conclusive presumption nor a prima facie inference to the overturned conviction. We are not disposed to adopt the third view. Plaintiff's final assignment is without merit.

AFFIRMED.