In re the MARRIAGE OF Louise I. HUSTON and John E. Huston.

Upon the Petition of Louise I. HUSTON, Appellee, and concerning John E. HUSTON, Appellant.

No. 2-60079.

Supreme Court of Iowa.

March 22, 1978.

Marks, Flagg, Hockett & Marks, by Kenneth D. Benhart, Des Moines, for appellant.

Williams, Hart, Lavorato & Kirtley, by William R. Stiles, West Des Moines, for appellee.

Considered by MOORE, C. J., and MASON, RAWLINGS, LeGRAND and REYNOLDSON, JJ.

RAWLINGS, Justice.

Respondent husband appeals default marriage dissolution decree and his overruled motion to set same aside. We affirm.

May 5, 1976, Louise I. Huston (Louise) commenced an action for termination of her marriage with John E. Huston (John). Although notice thereof was duly given, John neither appeared, moved, nor filed a responsive pleading.

October 15th a default decree was entered dissolving the marriage and making other provisions within the ambit of relief sought by Louise.

November 4th, pursuant to Iowa R.Civ.P. 236, John unsuccessfully moved to set aside the default decree.

November 15th he gave notice of appeal from the October 15th dissolution adjudication. Earlier the same day trial court, after a hearing, overruled John's rule 236 set aside motion. Timely notice of appeal therefrom was also given. Upon John's request we ordered consolidation of these two appeals. They will be entertained as one cause.

These are the questions here posed:

(1) Did trial court err in finding John's default was not due to mistake, inadvertence, surprise, excusable neglect or unavoidable casualty?

(2) Does the total effect of trial court's property, alimony, child support and attorney fees award constitute an abuse of discretion?

I. The first issue raised goes to viability of John's aforesaid post-dissolution motion. He, of course, contends trial court's refusal to set aside the default-related adjudication constitutes cause for reversal.

"A trial court is vested with broad discretion in ruling on a motion to set aside a default judgment. Such a ruling will be reversed on appeal only if this discretion is abused. Generally abuse will be found only where there is a lack of substantial evidence to support the trial court's ruling. We view the evidence in the light most favorable to the trial court's ruling and will uphold the same even where the trial court made no findings of fact or based its ruling upon a different ground. (Authorities cited).

"The burden is upon the movant to show good cause as to one of the grounds stated in rule 236. [R.Civ.P.] 'Good cause' for setting aside a default judgment is a sound, effective, truthful reason, something more than an excuse, a plea, an apology, an extenuation or some justification for the resulting effect. The movant must show his failure to defend was not due to his negligence, want of ordinary care or attention, or to his carelessness or inattention. The movant must affirmatively show he intended to defend and took steps to do so, but because of some misunderstanding, accident, mistake or excusable neglect failed to do so. (Authorities cited). By the plain language of rule 236 good cause must be based on (1) mistake, (2) inadvertence, (3) surprise, (4) excusable neglect, or (5) unavoidable casualty." *Paige v. City of Chariton*, 252 N.W.2d 433, 437 (Iowa 1977).

In light of the foregoing, relevant facts and John's related contentions now come into play.

John and Louise first separated in 1973 and she then commenced a dissolution proceeding. The parties met twice with an attorney to negotiate a settlement. Although this proceeding was never finalized and presumably dismissed, John thereafter paid $100 weekly child support pursuant to a negotiated agreement.

When John was served with original notice regarding the instant action he called Louise, who suggested an appointment with her attorney. On several succeeding occasions Louise repeated a request that John meet with her counsel. John told Louise to

make the appointment but apparently no such meeting ever occurred.

John contends this record affirmatively shows he intended to appear and defend in the present action but failed to do so for good cause attributable to his reliance upon Louise's meeting suggestions or requests. We disagree for several reasons.

First, the record reveals *no effort* whatsoever by John to appear and defend, although this court requires no less. See, e. g., *Paige*, 252 N.W.2d at 437; *Dealers Warehouse Co. v. Wahl & Associates*, 216 N.W.2d 391, 395 (Iowa 1974). In fact, John merely makes a bald assertion of *intention* to defend. Furthermore, he at best demonstrates nothing more than a willingness to confer with petitioner's attorney.

Second, the facts indicate mere inexcusable neglect. There is nothing about proffered negotiations which prevented John from appearing or otherwise acting to avoid default. Rather, on the basis of past conduct he simply assumed Louise was not serious about seeking a divorce. Suggestions concerning negotiation cannot be equated with misleading representations or assurances, whether they be characterized as fraudulent or otherwise. Compare *Gaynor v. Gaynor*, 246 Iowa 1039, 70 N.W.2d 923 (1955); *Svoboda v. Svoboda*, 245 Iowa 111, 60 N.W.2d 859 (1953). In brief, Louise did not promise John anything.

■ No abuse of discretion attended trial court's refusal to set aside the default decree.

II. Next considered is John's claim that the decree is inequitable and works a severe injustice upon him.

Preliminarily raised is a question regarding reviewability of the default judgment. As asserted by Louise, John encounters a preservation of error problem due to his trial court absence. More specifically, John is challenging merits of the decree for the first time on appeal.

■ On the other hand a final default decree may, under appropriate circumstances, be appealed like any other judgment. *Claeys v. Moldenschardt*, 169 N.W.2d 885, 886 (Iowa 1969), quoting *Rayburn v. Maher*, 227 Iowa 274, 282–283, 288 N.W. 136, 140 (1939); 4 Am.Jur.2d, Appeal and Error, § 115; 4 C.J.S. Appeal & Error § 155. So the question is not whether John can seek review of the default decree, but rather to what extent appellate consideration is limited by John's unexcused initial nonparticipation below.

He asserts a default dissolution decree, like any other marriage terminating adjudication, is here heard de novo without the necessity of trial court exceptions or objections. Supportively cited is *Svoboda*, which involved an appeal from an overruled rule 236 motion. In that case this court said, albeit in dicta, 245 Iowa at 122, 60 N.W.2d at 865:

> "The parties are in error in treating this appeal as triable in this court anew. *It is true that a suit for divorce is in equity, and if an appeal from the decree on its merits were before us it would be triable de novo.* But the divorce decree on its merits is not challenged in this appeal." (emphasis supplied).

■ With one critical difference, we accept *Svoboda's* pronouncement. Appellate review of default divorce decrees, like contested or dispositive litigated adjudications in such proceedings, is de novo. But it is *review* de novo, not trial de novo or trial anew as *Svoboda* suggests. Phrased otherwise, this is a court of review, without original jurisdiction to "retry" dissolution proceedings. In this regard *Buda v. Fulton*, 261 Iowa 981, 984–985, 157 N.W.2d 336, 338 (1968) and *Mason v. World War II Serv. Comp. Bd.*, 243 Iowa 341, 344, 51 N.W.2d 432, 434 (1952) recognized existence of a distinction between trial and review de novo. That distinction applies here.

Accordingly, our review of litigated dissolution proceedings is de novo on issues properly raised of record below. *In re Marriage of Winegard*, 257 N.W.2d 609, 613 (Iowa 1977); *In re Marriage of Peterson*, 227 N.W.2d 139, 141 (Iowa 1975); *In re Marriage of Ringus*, 226 N.W.2d 805, 807 (Iowa 1975); *In re Marriage of Morgan*, 218 N.W.2d 552, 556 (Iowa 1974).

Consistent therewith, this court has on several occasions declined to review issues raised the first time by dissolution appeals. See, e. g., *In re Marriage of Tucker*, 213 N.W.2d 498, 500 (Iowa 1973); *In re Marriage of Ried*, 212 N.W.2d 391, 393 (Iowa 1973); *In re Marriage of Boyd*, 200 N.W.2d 845, 850 (Iowa 1972); *Morris v. Morris*, 197 N.W.2d 357, 359 (Iowa 1972).

■ Naturally, when a default judgment is involved no specific issues could have been preserved. Therefore, in such instances, review is ordinarily limited "to determin[ing] whether the relief granted exceeded or was inconsistent with the demands made in the petition." *Claeys v. Moldenschardt*, 169 N.W.2d at 886. This is compatible with rule 235, which states:

"The judgment may award any relief consistent with the petition and embraced in its issues; but unless the defaulting party has appeared, it cannot exceed what is demanded against him in the petition as limited by the original notice."

In a dissolution case, however, we are satisfied de novo appellate review permits a broader determination, i. e., basic fairness of the decree's provisions in light of the total record made at trial. See *Schnabel v. Display Sign Service, Inc.*, 219 N.W.2d 546, 549 (Iowa 1974); *Masteller v. Board of Control of State Insts.*, 251 Iowa 234, 241, 100 N.W.2d 111 (1959).

■ It therefore follows a defaulting party to a dissolution proceeding may seek appellate review on the merits. But, our de novo review will generally be limited to (1) scope of relief granted, and (2) equities of the decree as determined by an examination of the entire record made at trial.

III. The instantly challenged decree is accordingly considered.

Louise received custody of the couple's three minor children and John was directed to pay $135 a week child support. Petitioner was awarded title to the family home, furniture and one of two automobiles. John was given the other vehicle and held to assume approximately $4000 in family debts, with a $2500 obligation for dental

braces being shared equally. Trial court also accorded Louise nominal alimony and $500 attorney's fee.

The record reveals Louise had a monthly net income of $525 and more than $1000 per month expenses. She represented John's net monthly income was about $1600.

Although John criticizes trial court's reliance upon this last figure, it was obviously all on which the judge could depend. Also, as heretofore disclosed, any obscurity regarding John's income can only be attributed to his trial court dereliction. In any event, it appears the modestly increased child support will no more than provide Louise with sufficient income to meet her expenses without financially incapacitating John.

Parenthetically, those expenses include payments on a substantial home mortgage obligation, a fact John neglects to mention when he deplores the loss of his equity in the house.

■ Conceding these decretal provisions are facially weighted in favor of Louise, closer scrutiny reveals they are not so inequitable or unjust as to mandate appellate modification of this default decree. A fortiori, the relief granted does not, as aforesaid, exceed that justified.

IV. Under existing circumstances petitioner's request for allowance of attorney's fee on appeal is denied.

AFFIRMED.

All Justices concur except LeGRAND, J., who concurs specially.

LeGRAND, Justice (concurring specially).

I concur in the result but disagree with some of the views expressed in the majority opinion concerning the scope of our review.

Today, the majority announces the rule that our review is "broader" in dissolution cases than in other de novo appeals. I see no legal basis for such a pseudo distinction. A de novo review is a de novo review. Furthermore, on practical grounds I find it both unfair and unwise to expand our traditional and statutory review function in the

very type of case in which it is most difficult to do so.