# IN THE COURT OF APPEALS OF IOWA

No. 18-2067
Filed September 25, 2019

IN RE THE MARRIAGE OF JULIE DALBY
AND DOUGLAS DALBY

Upon the Petition of
JULIE DALBY,
    Petitioner-Appellee,

And Concerning
DOUGLAS DALBY,
    Respondent-Appellant.
_____

Appeal from the Iowa District Court for Linn County, Ian K. Thornhill, Judge.

The husband appeals from the district court's division of assets in the parties' dissolution decree. **AFFIRMED AS MODIFIED.**

Mark D. Fisher of Nidey Erdahl Fisher Pilkington & Meier, PLC, Cedar Rapids, for appellant.

Dana A. Judas of Nazette, Marner, Nathanson & Shea LLP, Cedar Rapids, for appellee.

Considered by Potterfield, P.J., and May and Greer, JJ.

**POTTERFIELD, Presiding Judge.**

Douglas Dalby appeals from the decree dissolving his marriage to Julie Dalby. Douglas maintains the division of marital assets was inequitable and asks us to modify the equalization payment due to him from the amount of $31,331.55 to $112,770.24. He also asks for an award of appellate attorney fees. In response, Julie maintains the district court's division was equitable and asks that we award her appellate attorney fees.

**I. Background Facts and Proceedings.**

Douglas and Julie were married in August 2006. Julie has a child from a previous relationship who lived with Douglas and Julie until the child reached majority—approximately the first six years of their marriage. No children were born of the marriage.

Julie filed a petition for dissolution in January 2018. Douglas did not accept service until April 27, 2018.

Nearly a month later, on May 24, 2018, Julie filed notice of her intent to file for default judgment. Douglas still took no action, and, on June 5, Julie moved for entry of default. The clerk entered default against Douglas the next day.

On July 30, counsel for Douglas filed an appearance, an answer to Julie's petition for dissolution, and a motion to set aside the default. Julie resisted the motion to set aside, asserting she had text messages from Douglas that showed his failure to respond in a timely manner was not due to mistake or neglect as he indicated he had no intention of contesting the dissolution.

Following a hearing on in the issue, the district court denied Douglas's motion to set the default aside, ruling:

Douglas clearly decided he was not going to defend this action and was going to allow Julie to obtain a default. Thus, after accepting service, he did nothing to defend and acknowledged to Julie that he understood he would be defaulted. He did nothing to contact Julie's counsel or the court to preserve any rights he might have or inquire as to what he should do if he wanted to defend the action because he had no intention of defending.

. . . .

. . . On June 18, 2018, a default hearing was set for today's date. Douglas did nothing. Finally, in late July Douglas changed his mind and decided he wanted to defend this case. He then filed the present motion to set aside default judgment

. . . .

. . . Douglas' change of mind since entry of the default does not justify setting aside the default entered on June 5, 2018.

(Footnote omitted). In the same order, the court recognized that "[a]lthough a default has been entered, the court must still equitably and fully distribute the marital assets and debts when it enters a decree." The court set an additional one-hour hearing for the limited issue of the equitable distribution of the marital assets and debts.

That hearing took place in November. The parties submitted a joint stipulation listing all of their marital assets and liabilities and the corresponding agreed-upon values. Additionally, the parties agreed they had generally kept their various financial accounts in their individual names and each would keep their respective accounts. The issue was the amount of the equalization payment from one party to another that would be necessary to achieve equity. The marital assets totaled almost $589,000[1] while the debts amounted to

---

[1] We note that at the hearing, Julie testified that $25,000 of this was what she received in child support from her child's father; she seemed to argue this money should be considered nonmarital and set aside for her daughter. However, on the parties' joint stipulation, Julie included the $25,000 in the assets, and the district court considered it as marital in its division of assets. Julie does not challenge the district court's determination it was a marital asset to be divided, so we do not disturb this conclusion.

approximately $172,200, resulting in approximately $416,800 in net marital property. The marital home was valued at $200,000, and the parties had a mortgage of $140,000. Otherwise, a large portion of the marital assets was located in accounts in just Julie's name: a combined total of $243,997.23 in a money market, checking account, and 401k. In contrast, the accounts in Douglas's name amounted to $72,073.69.

At the hearing, Julie testified she believed she should be able to retain the money in her accounts because the parties had always made a point to keep separate accounts; neither party has access to the other's accounts or tracked the other's finances. According to Julie, throughout their marriage, she and Douglas shared household bills by Douglas paying the mortgage on the marital home while she "paid everything else." She estimated Douglas paid approximately $200 more each month on the mortgage than she did on the other family bills. According to Douglas, he also paid for the family's insurance, cell-phone plan, and "the majority of entertainment expenses whenever" the family would go out. Julie agreed the parties should split the equity in the marital residence but also indicated the basement required repairs, for which she believed Douglas should be responsible. According to an estimate she had prepared, the basement repair would cost $23,675. When asked, Julie reported she was unable to say what the value of the home would be after the basement repair was completed.[2] Based on this request, Julie believed she should be ordered to make an "equalization payment" to Douglas in the amount of

---

[2] The $200,000 value the parties agreed upon for the value of the marital home was the "as is" value.

$5121.05, which would result in Julie receiving a net value of $316,016.56 of the approximately $416,800 of marital property.

During his testimony, Douglas seemed to take responsibility for certain issues with the basement that needed fixed.[3] However, he claimed that much of the needed repair was due to water getting into the basement, which Douglas maintained had been a longtime issue in the home that Julie was aware of before he moved out. Douglas asked that the court divide the marital estate equally between the two parties, which would require ordering Julie to make an equalization payment of $112,770.24 to Douglas.

In making the division of marital property, the district court relied upon the stipulated values from the parties.[4] Additionally, as the parties agreed, Julie kept the marital home and took responsibility for the mortgage. Each party kept one vehicle and took responsibility for the corresponding vehicle loan. The only item with a disputed value at the time of the hearing, Julie's defined benefit pension, was ordered to be divided using the *Benson* formula.[5] Otherwise, the court refused to divide any of the monies in the parties' individual accounts. The court ordered Julie to make an equalization payment to Douglas of $31,331.55, but it arrived at this figure by giving Douglas half the equity in the marital home[6] plus a

---

[3] There was evidence some fixtures in the basement bathroom needed to be replaced due to lack of cleaning and issues involving mold.

[4] The court stated it was adopting the itemization and valuations in the parties' joint stipulation—$200,000 value for the home with a mortgage of $140,000. But in doing the actual calculation, it seems the court used a mortgage value of $142,461.90, which is close to the amount Julie testified the mortgage was at the time Douglas left the home and stopped making the mortgage payment. We rely on the stipulated values.

[5] *See In re Marriage of Benson*, 545 N.W.2d 252, 256 (Iowa 1996).

[6] The court determined half the equity in the home was equal to $28,769.05 rather than $30,000.

"repayment" for "disparity in shared expense agreement" of $14,400[7] and subtracting half the cost of the estimated basement repair ($11,837.50). This division of assets left Julie with a net award of $289,806.06 and Douglas with a net award of $126,928.68 of marital assets.

Douglas appeals.

## II. Standard of Review.

"In this equity action involving the dissolution of a marriage, our review is de novo." *In re Marriage of McDermott*, 827 N.W.2d 671, 676 (Iowa 2013). "Accordingly, we examine the entire record and adjudicate anew the issue of the property distribution." *Id.*

## III. Discussion.

Douglas does not challenge the district court's decision not to set aside the default. He focuses his argument on the claim the division of marital assets was inequitable. "[A] defaulting party to a dissolution proceeding may seek appellate review on the merits. But, our de novo review will generally be limited to (1) scope of relief granted, and (2) equities of the decree as determined by an examination of the entire record made at trial." *In re Marriage of Huston*, 263 N.W.2d 697, 700 (Iowa 1978).

As Julie emphasizes, "Iowa is an equitable distribution state." *McDermott*, 827 N.W.2d at 678. "An equitable distribution of marital property, based upon the factors in [Iowa Code section] 598.21(5) [(2018)], does not require an equal division of assets." *Id.* at 682 (citation omitted). "Equality is, however, most often

---

[7] We assume the court reached this figure by "refunding" Douglas half of the extra $200 he spent each month on family bills multiplied by roughly the number of months the parties were living together and splitting the expenses.

equitable; therefore, we have repeatedly insisted upon the equal or nearly equal division of marital assets." *Id.*

It seems the district court's division of assets was predicated on the fact that Julie saved a large amount of money—much more than Douglas—while generally earning substantially less than he did each year.[8] It seems unlikely Julie would have been able to save such a large amount without Douglas's contributions to the family. Especially when we consider that Julie earned less than $3000 one year during the parties' marriage while she went back to school. Moreover, "[i]t is important to remember marriage does not come with a ledger." *In re Marriage of Fennelly*, 737 N.W.2d 97, 104 (Iowa 2007). "Each person's total contributions to the marriage cannot be reduced to a dollar amount." *Id.* "Financial matters make up but a portion of a marriage, and must not be emphasized over the other contributions made to a marriage in determining an equitable distribution." *In re Marriage of Miller*, 552 N.W.2d 460, 465 (Iowa Ct. App. 1996). And while even Douglas agreed the parties had a "loose agreement" to be responsible for their individual finances throughout the marriage, there is no evidence the agreement contemplated or applied to what would occur in the event of a dissolution.

---

[8] According to the tax returns admitting at the hearing, the parties' incomes from the several years before filing for dissolution were as follows:

| Tax Year | Julie | Doug |
|---|---|---|
| 2010 | $58,608 | $111,805 |
| 2011 | $2540 | $115,592 |
| 2012 | $53,179 | $116,636 |
| 2013 | $93,911 | $123,454 |
| 2014 | $70,998 | $98,314 |
| 2015 | $103,305 | $112,151 |
| 2016 | $118,342 | $118,972 |

In considering the enumerated factors of section 589.21(5), a more-equal split of the marital property is necessary to achieve equity. At the time of dissolution, both Douglas and Julie were in their mid-forties. Douglas was unemployed, as he had recently completed treatment for alcohol abuse and had quit his job; he admitted he had not yet started looking for new employment. Still, Douglas and Julie seem to have approximately the same earning capacity: in 2016, Douglas earned $118,972 and Julie earned $118,342. Other than Douglas's issues with alcoholism, it seems both were in good health and would be able to work for a number of years.

We modify the district court's property division to award Douglas half the marital property. However, we agree with the district court that Douglas should be required to pay for half the cost of the basement repair, as Douglas admitted at least some fault in the issues with the basement. We recognize that the value of the home will likely increase after the repairs are completed, but we agree with the district court that the amount of the increase is too uncertain for us to consider it in our division of assets. Therefore, we modify the equalization payment Julie owes to Douglas to the amount of $100,932.74.[9]

Both Douglas and Julie request appellate attorney fees.

> Appellate attorney fees are not a matter of right, but rather rest in this court's discretion. Factors to be considered in determining whether to award attorney fees include: "the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal."

---

[9] We calculated this number by taking the amount of net assets Julie was awarded ($321,137.61) and subtracting the amount of net assets Douglas was awarded ($95,597.13) and dividing the difference in half to get $112,770.24. We then subtracted half the estimated cost of the renovation ($11,837.50) to get the total owed.

*In re Marriage of Sullins*, 715 N.W.2d 242, 255 (Iowa 2006) (citation omitted). We deny Julie's request because Douglas has been largely successful on appeal. And we deny Douglas's request because we believe our adjustment of the division of property—considered together with the parties' nearly-equal earning capacity—allows Douglas to pay his own appellate attorney fees. *See, e.g.*, *In re Marriage of Larson*, No. 14-1333, 2015 WL 5965116, at *10 (Iowa Ct. App. Oct. 14, 2015) (noting that while one party was successful on appeal, the modification in favor of the successful party "sufficiently equip[ped]" the party to pay their own fees).

We affirm as modified the dissolution decree.

**AFFIRMED AS MODIFIED.**

May, J., concurs; Greer, J., concurs specially.

**GREER, Judge** (concurring specially).

I agree with modifying the decree to increase the equalization payment to Douglas, but I write separately to address the cost of the basement repair. As the majority recognizes, Douglas admitted at least some fault for damage to the basement. To that end, Julie testified Douglas withdrew $20,000 to $30,000 from one of his accounts to pay for repairs that have yet to happen. Douglas did not explain or otherwise account for these missing funds. Therefore, I would reduce the equalization payment to Douglas by an additional $11,837.50, representing the full amount of the basement repair. I otherwise concur with the majority's well-reasoned opinion.