**IN THE COURT OF APPEALS OF IOWA**

No. 23-1667
Filed March 19, 2025

**IN RE THE MARRIAGE OF JESSICA KATE GARDNER**
**AND RICHARD JAY GARDNER**

**Upon the Petition of**
**JESSICA KATE GARDNER,**
         Petitioner-Appellee,

**And Concerning**
**RICHARD JAY GARDNER,**
         Respondent-Appellant.

_____

Appeal from the Iowa District Court for Linn County, Justin Lightfoot, Judge.

A respondent appeals the property-division provisions of a marriage dissolution decree. **AFFIRMED.**

Alexander S. Momany of Howes Law Firm, P.C., Cedar Rapids, for appellant.

Rae M. Kinkead and Ryan C. Shellady of Simmons Perrine Moyer Bergman PLC, Cedar Rapids, for appellee.

Considered by Badding, P.J., Langholz, J., and Bower, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2025).

**LANGHOLZ, Judge.**

Richard Gardner appeals the property division of the decree dissolving his marriage with Jessica Gardner. He argues that his $250,000 cash equalization payment to Jessica is inequitable because the district court inaccurately valued some of the property, improperly included proceeds from the sales of real estate and silver bars that he had already spent, and failed to divide his retirement accounts according to the *Benson* formula[1] rather than awarding them all to him. But most of these challenges come too late. Because of his repeated failure to respond to discovery and comply with court orders, the district court found Richard in default. Even so, the court permitted Richard to testify at the hearing to decide the proper relief for the decree. And still, Richard did not contest most of the valuations, the inclusion of the proceeds, or the award of his undivided retirement accounts. So any error on these issues is not preserved for our appellate review.

On the two factual issues that are arguably preserved—the valuation of the commercial real estate and the proceeds from the silver bars—we affirm the district court because the valuations are within the permissible range of evidence. And based on the record before the district court, we agree that the property division and the $250,000 equalization payment is equitable. We also grant Jessica's request for $7500 of her appellate attorney fees.

## I.      Factual Background and Proceedings

Jessica petitioned to dissolve the parties' roughly ten-year marriage in August 2022. By the time of the September 2023 default hearing, Jessica was

---

[1] *See In re Marriage of Benson*, 545 N.W.2d 252, 254–57 (Iowa 1996).

forty-five and Richard was fifty-two. Jessica works as an activity director and event coordinator for a senior living facility. Richard is self-employed, owning a plumbing business, a stump grinding business, and a commercial real estate business. They have no children together, and Jessica did not request spousal support. So the main fight in this case has been over the property division.

Both parties were originally represented by counsel. In her petition, Jessica requested that all the parties' assets and debts be divided equitably. In his answer, Richard pleaded that each party has their own "separate premarital assets and debts that should remain each party's separate assets and debts."

Eventually, Jessica proposed that she be awarded the marital home (and its mortgage), her car (and its loan), her three retirement accounts, and a few other smaller bank accounts and credit cards. She proposed Richard would keep his businesses, including the commercial real estate and much debt, his retirement accounts, many motorcycles, and various other accounts and property. She also claimed that Richard was dissipating marital assets including more than $300,000 from the sale of a cabin and more than $100,000 from the sale of silver bars that had been stored in the marital home.

Because of her concerns, soon after petitioning for dissolution, Jessica sought a temporary injunction preventing the parties from "dissipating marital property." The court ultimately entered a stipulated order that prohibited the parties, "without prior written consent of the other party," from "[i]ntentionally damaging, secreting away, hiding, destroying, concealing, or dissipating marital property" and from "[s]elling, spending, disposing of, or transferring to third parties,

any asset of either party," except for "regular and ordinary living expenses . . . and regular, ordinary, and legitimate business expenses."

In January 2023, Jessica first served discovery requests on Richard. After concluding his responses were deficient, Jessica sent a thirteen-page deficiency letter and the parties agreed that Richard would supplement his discovery responses by March 31. The day before his responses were due, Richard's attorney was granted leave to withdraw because Richard was "unable to meet the terms of his fee agreement" and he had decided to represent himself. So when Richard failed to provide his supplemental response and Jessica's attorney was unable to reach him by phone or email to resolve the dispute, Jessica moved to compel his response. Richard did not resist the motion. And the district court granted it, ordering Richard to "provide complete answers to the interrogatories and complete responses to the requests for production of documents within 10 days." The court also ordered Richard to pay $250 of Jessica's attorney fees.

That deadline too came and went without Richard providing any discovery responses. So in early May, Jessica moved for default judgment because of his failure to comply with his discovery obligations. *See* Iowa R. Civ. Proc. 1.517(2)(b)(3). After a June hearing, the district court declined to enter default, reasoning Richard "should be given a 'last chance' to comply with discovery requests" and the order to compel. And so, the court ordered Richard to provide his complete discovery responses within thirty days and it ordered Richard to pay another $500 of Jessica's attorney fees.

Once again, Richard failed to comply—this time providing a few documents but ignoring other requests and refusing to remedy the originally identified

deficiencies. Jessica thus renewed her motion for default judgment in mid-July. And this time, the court granted the motion, directed the clerk to enter a default against Richard, and set a September hearing "to determine the relief to be granted upon Default."

Despite his default, Richard appeared and represented himself at the hearing to prove up Jessica's requested relief. So the district court permitted him to testify and questioned him about his position on Jessica's requests. Richard confirmed that he agreed with Jessica's proposed awards of the assets and debts to each of the parties, including awarding him "all retirement funds in [his] name." But he contested her request for a $250,000 equalization payment, testifying that he could not "come up with" that amount of money and that he wanted "Jessica to take her debt and her attorney fees and I will take my debt and my attorney fees and move on." He also disputed the value of his commercial real estate and the amount he received from selling the silver bars.

After the hearing, the district court entered a thorough default decree dissolving the parties' marriage. The court awarded the marital assets and debts as the parties agreed. And based on its valuations, the court found that Jessica was receiving a net value of $183,417 and Richard was receiving $1,310,538. The court also found it "likely" that Richard had additional assets not factored into this calculation, "including multiple other motorcycles, gold bars, stocks, and tools." The court reasoned that an equal division would thus require an equalization payment of $563,560 from Richard to Jessica. But since Jessica asked for less than half of that—$250,000—and the court agreed that amount was equitable, the court ordered Richard to pay a $250,000 cash property settlement in two

installments: $100,000 due within forty-five days of the decree and the remaining amount within eighteen months. Richard now appeals.

## II. Error Preservation

"It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal." *Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002). This gives the district court a chance to correct the error itself "at a time when corrective action can be taken." *In re Marriage of Heiar*, 954 N.W.2d 464, 470 (Iowa Ct. App. 2020) (cleaned up). And it ensures that we are serving as a court of *appeals* by reviewing a decision previously made by the district court, rather than addressing it for the first time on appeal. *See Meier*, 641 N.W.2d at 537. This error-preservation requirement applies even to dissolution appeals because we only conduct "review de novo, not trial de novo or trial anew." *In re Marriage of Huston*, 263 N.W.2d 697, 699–700 (Iowa 1978). Still, even a defaulting party to a dissolution decree may seek review of the "basic fairness of the decree's provisions in light of the total record made at trial." *Id.* at 700.

On appeal, Richard argues that the equalization payment is inequitable and should be eliminated entirely because the district court improperly calculated the net value of each parties' respective property awards. He contends that the court should not have included proceeds from the sales of the parties' cabin and silver bars because he had spent all those proceeds by the time of the hearing. Similarly, he argues that his retirement accounts should have been excluded from the division and instead separately divided up with a qualified domestic relations order

using the *Benson* formula.  He also challenges the district court's valuation of his two businesses, his commercial real estate, and the silver bars.

But in the district court, the only two issues he arguably raised were the valuation of his commercial real estate and the silver bars.  He testified about his belief of the proper value of each of these assets.  He did not do the same on the value of his businesses.  Nor did he present argument or evidence that the various assets he seeks to exclude from the division are not properly considered marital assets.  Indeed, when questioned specifically by the court, he agreed that "all retirement funds in [his] name" should be awarded to him.

Richard points us to the joint stipulation of assets and liabilities as a basis for preserving error on those issues that he did not raise at the default hearing.  Yet even in that stipulation, he failed to provide any valuation for his businesses, listing it as "unknown" for both.  And the stipulation says nothing about the parties' respective positions on including his retirement accounts or the proceeds from the cabin or silver bars in the property division.

True, Richard had a default entered against him and was told he would not be able to present any evidence to the district court.  But contrary to Richard's suggestion on appeal, that is not a reason for us to excuse his failure to preserve error.  Actions have consequences.  And any limitation on Richard's ability to present evidence was a direct and intended consequence of his actions failing to comply with the court orders and our discovery rules.  What's more, despite his default, Richard was still ultimately given the chance to testify and contest any aspect of Jessica's proposed property division.  Yet he failed to take full advantage

of that opportunity to raise all the issues he brings before us now for the first time on appeal.

Richard has thus failed to preserve error on any of the issues he raises on appeal except for the valuation of his commercial real estate and the silver bars. We will confine our review to these two issues and his general claim that the "total record made at trial" does not support the "basic fairness" of ordering him to pay the equalization payment. *Huston*, 263 N.W.2d at 700.

### III. Property Division

In a dissolution decree, "[t]he court shall divide all property, except inherited property or gifts received or expected by one party, equitably between the parties." Iowa Code § 598.21(5) (2022); *see also In re Marriage of McDermott*, 827 N.W.2d 671, 678 (Iowa 2013) ("Iowa is an equitable distribution state."). This division must include the marital debts too. *See In re Marriage of Sullins*, 715 N.W.2d 242, 251 (Iowa 2006). Dividing the assets and debts equitably requires a consideration of the facts of each case and the factors in Iowa Code section 598.21(5). *See McDermott*, 827 N.W.2d at 682. While an equal division is not always required, "it is generally recognized that equality is often most equitable." *In re Marriage of Kimbro*, 826 N.W.2d 696, 703 (Iowa 2013) (cleaned up). And as part of the division, a court may order an equalization payment from one party to the other to achieve a more equal division than would otherwise be practical. *See McDermott*, 827 N.W.2d at 683 ("An equalization payment is preferable when the court cannot divide an asset easily and there are not enough liquid assets in the marital estate to achieve an equitable distribution.").

We review the district court's property division, including its valuation of the property, de novo. *See In re Marriage of Shanks*, 805 N.W.2d 175, 177 (Iowa Ct. App. 2011). But "[v]aluation is difficult and trial courts are given considerable leeway in resolving disputes as to valuations." *Id.* "Ordinarily, a trial court's valuation will not be disturbed when it is within the range of permissible evidence." *In re Marriage of Hansen*, 733 N.W.2d 683, 703 (Iowa 2007). And we especially defer "when valuations are accompanied by supporting credibility findings or corroborating evidence." *Id.*

*Commercial Real Estate*. Richard first challenges the district court's valuation of his commercial real estate. Jessica argued that the property was worth $2 million. The assessed value was $1,513,200. And Richard testified that the property was recently appraised at around $1.8 million. The court found that the value was $1,850,000. It reasoned that Richard's testimony was "fairly vague" and lacking credibility and "documentary support," while Jessica's estimate likewise had little evidence to support it aside from common knowledge that "assessed values are often lower than sale prices."

Richard now contends that the property should have been valued at only $155,342.70 because two outstanding loans totaling $1,694,657.30 should have been deducted from the $1,850,000 in calculating the value. But as Richard concedes, the district court separately assigned these two debts to Richard in the property division and factored them in its calculation of the total net value of Richard's property awards—thus reaching the same result. And he fails to explain how accounting for the assets and debts separately when calculating the net valuation of all his assets and debts had any effect on the property division or the

equalization payment. And we see no way that it could. Because the court's valuation is reasonable and within the permissible range of evidence, and Richard's challenge to this valuation has no merit, we affirm the valuation of the commercial real estate at $1,850,000.

*Silver Bars Proceeds*. Richard next challenges the district court's valuation of the proceeds he obtained by selling the parties' silver bars. Jessica argued for a valuation of $124,000—submitting receipts for purchases totaling $101,897 and testifying that she believed he had purchased more than she had been able to verify because "one of the Bullion shop owners said there was more, but recent receipts could not be tracked down." Richard testified that he sold the silver bars at a loss. And when pressed on cross-examination for a precise value, he said, "I would have to go back and look, but I would say it was roughly $70,000." Based on this evidence, the court found the value to be $101,897—the amount shown on the receipts—reasoning that it did "not find [Richard's] testimony to be credible."

On appeal, Richard argues that we should credit his testimony and value the silver bars at $70,000 because the purchase receipts "do not accurately reflect the sale price for those items." But on our de novo review, we find that the district court's valuation is reasonable and within the range of permissible evidence. With conflicting testimony about whether the value of the silver bars sold was lower or higher than the amount supported by the purchase receipts, it was reasonable for the court to decide that the amount shown by the receipts was the most reliable basis to value the silver bars. Particularly so when the court found that Richard's testimony on this and other "financial matters is not credible"—a determination to which we defer. *See Hansen*, 733 N.W.2d at 703. And even more because "any

obscurity" about the precise amount Richard received from the sale of the silver bars "can only be attributed to his trial court dereliction." *Huston*, 263 N.W.2d at 700. We thus affirm the district court's valuation of the silver bars proceeds at $101,897.

*Equities of the Equalization Payment.* Finally, we consider the "equities of the" property division and $250,000 equalization payment "as determined by an examination of the entire record made at trial." *Id.* Having already rejected the two preserved valuation challenges, we see no other basis to second-guess the division of property between the parties or the valuation of the property. After all, Richard was present at the hearing and expressly agreed to the division and there is ample evidence supporting the valuations made by the district court.

So as the district court found, the property division resulted in Jessica receiving assets and debts with a net value of $183,417 and Richard receiving a net value of *at least* $1,310,538 given the many other assets the court found were left out of the calculation. Despite a $563,560 equalization being the amount needed to make the known property equal, Jessica only asked for—and the district court awarded— a $250,000 payment. And Jessica explained that without the first $100,000 installment of that payment, she would not be able to refinance and retain the family home she was awarded. Richard, on the other hand, was awarded most of the property—including income generating real estate and businesses. On our review, we thus agree with the district court that the property division and the $250,000 equalization payment are equitable.

### IV.    Appellate Attorney Fees

Jessica asks us to award her $7500 of her appellate attorney fees. And she has supported that request by filing an attorney-fee affidavit that itemized the fees incurred through the filing of her brief, totaling roughly $9000. *See In re Marriage of Samuels da Fonseca Silva*, 15 N.W.3d 801, 808–09 (Iowa Ct. App. 2024) (discussing our court's preference for parties requesting appellate attorney fees to submit an attorney-fee affidavit providing "an itemization of the attorney's time expended, tasks performed, and hourly rate that provides sufficient detail for us to exercise our discretion in deciding a reasonable fee award").

An award of appellate attorney fees in dissolution appeals is discretionary—not a matter of right. *See McDermott*, 827 N.W.2d at 687. In exercising that discretion, "we consider the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal." *Id.* (cleaned up). We agree that an award of fees is appropriate here, especially considering the relative merits of Richard's appeal from a *default* dissolution decree, mainly raising issues that should have been raised in the district court rather than this appeal. We also agree that the amount of fees is reasonable. And so, we award Jessica $7500 in appellate attorney fees.

**AFFIRMED**.